UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
VICINAGE OF TRENTON

| | |
|---|---|
| JANE DOE,<br><br>        Plaintiff,<br><br>v.<br><br>VINCENT T. ARRISI, IN HIS OFFICIAL CAPACITY AS STATE REGISTRAR, OFFICE OF VITAL STATISTICS AND REGISTRY; OFFICE OF VITAL STATISTICS AND REGISTRY; CATHLEEN D. BENNETT, IN HER OFFICIAL CAPACITY AS COMMISSIONER OF NEW JERSEY DEPARTMENT OF HEALTH; AND NEW JERSEY DEPARTMENT OF HEALTH,<br><br>        Defendants. | Hon. Michael A. Shipp, U.S.D.J.<br>Hon. Douglas E. Arpert, U.S.M.J.<br><br>Civil Action No. 3:16-cv-08640-MAS-DEA<br><br>Motion Returnable on December 4, 2017<br><br><br><br>FILED ELECTRONICALLY |

---

BRIEF ON BEHALF OF DEFENDANTS IN SUPPORT OF THEIR MOTION TO
DISMISS PLAINTIFF'S AMENDED COMPLAINT IN LIEU OF AN ANSWER
PURSUANT TO FED. R. CIV. P. 12(b)(6)

---

CHRISTOPHER S. PORRINO
ATTORNEY GENERAL OF NEW JERSEY
Richard J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, New Jersey 08625-0112
Attorney for Defendants

Melissa Bayly
Deputy Attorney General
    On the Brief

# TABLE OF CONTENTS

PRELIMINARY STATEMENT............................................ 1

FACTS AND PROCEDURAL HISTORY.................................... 2

STANDARD OF REVIEW.............................................. 7

ARGUMENT

POINT I........................................................ 8

PLAINTIFF'S SUBSTANTIVE AND PROCEDURAL DUE PROCESS CLAIMS FAIL
BECAUSE NO FUNDAMENTAL RIGHT OR PROPERTY RIGHT IS IMPLICATED AND
N.J. Stat. Ann. § 26:8-40.12 WITHSTANDS RATIONAL BASIS SCRUTINY.
.............................................................. 8

    A. N.J. Stat. Ann. § 26:8-40.12 Does Not Burden Any
    Fundamental Right........................................ 9

    B. N.J. Stat. Ann. § 26:8-40.12 Withstands Rational Basis
    Review.................................................. 18

    C. N.J. Stat. Ann. § 26:8-40.12 Does Not Violate the Right
    to Procedural Due Process............................... 23

POINT II...................................................... 25

PLAINTIFF FAILS TO STATE A COGNIZABLE EQUAL PROTECTION CLAIM.. 25

POINT III..................................................... 29

PLAINTIFF FAILS TO STATE A COGNIZABLE CLAIM UNDER THE ADA OR THE
REHABILITATION ACT BECAUSE DEFENDANTS HAVE NOT DISCRIMINATED
AGAINST PLAINTIFF BASED ON A DISABILITY, AND GENDER DYSPHORIA IS
NOT A DISABILITY UNDER EITHER STATUTE......................... 29

POINT IV...................................................... 33

PLAINTIFF'S CLAIMS FOR MONETARY DAMAGES MUST BE DISMISSED
BECAUSE DEFENDANTS ARE ENTITLED TO SOVEREIGN IMMUNITY AND ARE
NOT PERSONS UNDER § 1983....................................... 33

CONCLUSION.................................................... 34

## TABLE OF AUTHORITIES

### CONSTITUTIONAL PROVISIONS

U.S. Const. Amend. XI .......................................... 34

### STATE STATUTES

Ala. Code § 22-9A(d) ........................................... 22

ALM GL ch. 46, § 13(e)(1) ...................................... 22

Ariz. Rev. Stat. § 36-337(A)(3) ................................ 22

Ark Code. Ann. § 20-18-307(d) .................................. 22

Colo. Rev. Stat. § 25-2-115(4) ................................. 22

Conn. Ge. Stat. § 19a-42 ....................................... 22

Idaho Code § 39-250 ............................................ 23

KRS § 213.121(5) ............................................... 22

La. R.S. § 40:62(A) ............................................ 22

Mich. Comp. Laws Ann. § 333.2831(c) ............................ 22

Mo. Ann. Stat. § 193.215(9) .................................... 22

Mont. Code Ann. § 50-15-204 .................................... 22

N.C. Gen. Stat. § § 130A-118(b) ................................ 23

N.D. Cent. Code § 23-02.1-25 ................................... 23

N.J. Stat. Ann. § 26:8-23 .................................. 3, 20

N.J. Stat. Ann. § 26:8-24 ....................................... 3

N.J. Stat. Ann. § 26:8-40.12 .............................. passim

N.J. Stat. Ann. § 26:8-54 ....................................... 4

Neb. Rev. Stat. § 71-604.01 .................................... 23

O.C.G.A. § 31-10-23 ............................................ 22

Ohio Rev. Code §3705.15 ........................................ 23

RSA 5-C:87.................................................... 23

Va. Code Ann. § 32.1-269..................................... 23

Wis. Stat. Ann. § 69.15...................................... 23

### FEDERAL STATUTES

29 U.S.C. § 794(a)........................................... 32

29 U.S.C.S. § 705(20)(f)..................................... 32

42 U.S.C. § 12101............................................. 5

42 U.S.C. § 1983.............................................. 4

42 U.S.C. 12102.............................................. 31

42 U.S.C. 12211.............................................. 31

### FEDERAL CASES

Adar v. Smith, 639 F.3d 146 (5th Cir. 2011).................. 15

Alcaraz v. Block, 746 F.2d 593 (9th Cir. 1984)............... 30

Alexander v. Whitman, 114 F.3d 1392 (3d Cir. 1997)............ 9

Ampadu v. U.S. Citizenship & Immigration Servs., Dist. Dir., 944
    F. Supp. 2d 648 (C.D. Ill. 2013) .......................... 19

Artway v. Attorney General of State of N.J., 81 F.3d 1235 (3d
    Cir. 1996) ............................................... 26

Ashcroft v. Iqbal, 556 U.S. 662 (2009)....................... 8

Bi-Metallic Inv. Co. v. State Board of Equalization, 239 U.S.
    441 (1915) ............................................... 25

Board of Regents v. Roth, 408 U.S. 564 (1972)............ 10, 25

Bowen v. Roy, 476 U.S. 693 (1986)............................ 30

Bowers v. Nat'l Collegiate Athletic Ass'n, 118 F. Supp. 2d 494
    (D.N.J. 2000) ............................................ 31

Bowers v. NCAA, 475 F.3d 524 (3d Cir. 2007).................. 31

Brace v. Cty. of Luzerne, 873 F. Supp. 2d 616 (M.D. Pa. 2012). 19

Brian B. ex rel. Lois B. v. Com. of Pennsylvania Dep't of Educ., 230 F.3d 582 (3d Cir. 2000) ................................. 19

Carey v. Population Servs., Int'l, 431 U.S. 678 (1977)........ 12

Chapman v. United States, 500 U.S. 453 (1991)................. 29

City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432 (1985) ...................................................... 26

Clark v. Jeter, 486 U.S. 456 (1988).......................... 29

Cruzan v. Director, Missouri Dep't of Health, 497 U.S. 261 (1990) ...................................................... 13

Doe v. Delie, 257 F.3d 309 (3d Cir. 2001).................... 11

Doe v. Luzerne Cty., 660 F.3d 169 (3d Cir. 2011)............. 11

Doe v. Se. Pa. Transp. Auth., 72 F.3d 1133 (3d Cir. 1995)..... 11

Donatelli v. Mitchell, 2 F. 3d 508 (3d Cir. 1993)............ 29

F.C.C. v. Beach Communications, Inc., 508 U.S. 307 (1993)..... 29

F.E.R. v. Valdez, 58 F.3d 1530 (10th Cir. 1995).............. 30

FCC v. Beach Communications, 508 U.S. 307 (1993)............. 19

Fraternal Order of Police v. City of Philadelphia, 812 F.2d 105 (3d Cir. 1987) ............................................. 11

Frederick L. v. Dep't of Pub. Welfare of the Commonwealth of Pa., 364 F.3d 487 (3d Cir. 2004) ........................... 32

Griswold v. Connecticut, 381 U.S. 479 (1965)................. 12

Gruenke v. Seip, 225 F.3d 290 (3d Cir. 2000)................. 11

Hargrave v. Vermont, 340 F.3d 27 (2d Cir. 2003).............. 32

In re Michaela Lee R., 756 A.2d 214 (Conn. 2000)............. 15

J.R. v. Utah, 261 F. Supp. 2d 1268 (D. Utah 2002)............ 19

Loving v. Virginia, 388 U.S. 1 (1967)........................ 12

Mathews v. Eldridge, 424 U.S. 319 (1976)..................... 24

Malleus v. George, 641 F.3d 560 (3d Cir. 2011)............... 10

Memorial Hosp. v. Maricopa Cnty., 415 U.S. 250 (1974)........ 28

Meyer v. Nebraska, 262 U.S. 390 (1923)....................... 10

Michael M. v. Superior Court of Sonoma Cty., 450 U.S. 464 (1981)
     ....................................................... 27

Morse v. Lower Merion Sch. Dist., 132 F.3d 902 (3d Cir. 1997).. 8

Mortensen v. First Fidelity Savings and Loan Assoc., 549 F.2d
     884 (3d Cir. 1977) ...................................... 7

Nicholas v. Pennsylvania State Univ., 227 F.3d 133 (3d Cir.
     2000) .................................................. 9

Obergefell v. Hodges, 135 S. Ct. 2584 (2015)................. 12

Parham v. Hughes, 441 U.S. 347 (1979)....................... 27

Pennhurst State Sch. and Hosp. v. Halderman, 465 U.S. 89 (1984)
     ....................................................... 34

Pension Ben. Guar. Corp. v. White Consol. Industries, Inc., 998
     F.2d 1192 (3rd Cir. 1993) .............................. 3

Planned Parenthood of Se. Pennsylvania v. Casey, 505 U.S. 833
     (1992) ................................................. 10

Rinaldi v. Yeager, 384 U.S. 305 (1966)...................... 27

Rochin v. California, 342 U.S. 165 (1952)................... 13
Sammon v. New Jersey Bd. of Med. Examiners, 66 F.3d 639 (3d Cir.
     1995) .................................................. 9

Scheuer v. Rhodes, 416 U.S. 232 (1974)...................... 7

Sheridan v. NGK Metals Corp., 609 F.3d 239 (3d Cir. 2010)..... 8

Sterling v. Borough of Minersville, 232 F.3d 190 (3d Cir. 2000)
     ....................................................... 11

Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989)...... 35

Young v. Sunbury Police Dep't, 160 F. Supp. 3d 802 (M.D. Pa.
     2016) .................................................. 31

**STATE CASES**

Beatie v. Beatie, 333 P.3d 754 (Ariz. Ct. App. 2014).......... 22

Does 1, 2, 3, 4, 5, 6, & 7 v. State, 993 P.2d 822 (Or. 1999).. 15

In re Declaratory Relief for Ladrach, 513 N.E.2d 828 (Ohio P. Ct. 1987) ................................................... 23

In re Dohl & Neilsen Marriage License, 7 Pa. D. & C.2d 312 (Pa. Orph. 1957) ............................................... 20

In re Michaela Lee R., 756 A.2d 214 (2000).................... 20

**STATE REGULATIONS**

Admin. R. Mont. 37.8.311(5)................................... 22

Conn. Agencies Regs. § 19a-41-9(e)............................ 22

Del. Admin. Code 4205 § 10.9.4................................ 22

Idaho Admin. Code § 16.02.08.201.............................. 23

K.A.R. § 28-17-20(b)(1)(A)(i)................................. 23

N.D. Admin. Code § 33-04-12-02................................ 23

Tenn. Code Ann. § 68-3-203(d)................................. 23

**MISCELLANEOUS**

OIG Report, Birth Certificate Fraud (Sept. 2000).............. 21

Sponsor's Statement to L. 1984, c. 191, § 1................... 3

Way Out West: A Comment Surveying Idaho State's Legal Protection of Transgendered and Gender Non-Conforming Individuals, 49 Idaho L. Rev. 587, 611 (2013) ............................... 23

## PRELIMINARY STATEMENT

New Jersey birth certificates set forth the biological sex of the registrant as ascertained at birth.  Birth certificates do not account for the registrant's gender, which is not ascertainable at birth.  To amend that physical, anatomical description of sex, N.J. Stat. Ann. § 26:8-40.12 requires proof that the registrant's physical anatomy has actually changed.  Thus, the statute ensures that the vital record remains accurate and consistent with the registrant's physical appearance and anatomy, advancing New Jersey's recognized interests in ensuring accuracy in vital records and reducing the likelihood that vital records are used for fraudulent purposes.

Plaintiff seeks to upend the accuracy and reliability of birth records guaranteed by N.J. Stat. Ann. § 26:8-40.12.  According to Plaintiff, the Constitution requires that transgender individuals be allowed to, upon demand, change the physical sex description on a birth certificate in accordance with the individual's gender identity or gender expression, regardless of that individual's physical anatomy and without any proofs.

The Constitution requires no such thing.  Plaintiff's substantive due process claim is faulty because N.J. Stat. Ann. § 26:8-40.12 does not burden any fundamental right, and she fails to adequately allege an equal protection claim because the statute does not discriminate or classify based on anything other than

1

innate physiological differences.  Her Americans with Disabilities Act and Rehabilitation Act claims are simply inapplicable, because each statute excludes gender identity disorders from its definition of disability.  Thus, the complaint's four counts should be dismissed for failure to state a claim.

## FACTS AND PROCEDURAL HISTORY[1]

Plaintiff is a transgendered ("trans") individual diagnosed with Gender Dysphoria (GD).  <u>Amended Compl.</u> at ¶ 53, ¶ 63.  Trans is a biological condition that refers to individuals who are born with bodies whose physical anatomy differs from the gender with which they identify.  <u>Id.</u> at ¶¶ 6-7.  GD is a condition that may be caused by the incongruence between gender identity and physical anatomy, and refers to "clinically significant distress" associated with being trans.  <u>Id.</u> at ¶¶ 64-65.

Plaintiff challenges the constitutionality of a New Jersey statute, N.J. Stat. Ann. § 26:8-40.12.  The Defendants are Vincent T. Arrisi, in his official capacity as State Registrar of Vital Statistics, the Office of Vital Statistics and Registry, Cathleen Bennett, in her official capacity as Commissioner of the New Jersey Department of Health, and the New Jersey Department of Health.  The Department of Health is charged with securing the "prompt and

---

[1]Because the statement of facts and the procedural history are closely intertwined, they have been combined to avoid repetition. For the purpose of this motion only, Defendants accept the factual and procedural recitation in Plaintiff's Amended Complaint.

accurate registration" of births and other vital events.  N.J. Stat. Ann. § 26:8-23.  As the State Registrar, Defendant Arrisi supervises the registration of vital records such as birth certificates throughout the State.  N.J. Stat. Ann. § 26:8-24.  The State Registrar also prepares blank birth certificate forms and determines the contents.  N.J. Stat. Ann. § 26:8-24(c), -29.  In New Jersey, birth certificates contain only a designation for "sex."  See Exhibit A to Certif. of Vincent Arrisi.[1]

New Jersey enacted N.J. Stat. Ann. § 26:8-40.12 in 1984.  The statute requires the State Registrar to issue a new birth certificate upon request to a person born in New Jersey who undergoes sex reassignment surgery (SRS) and obtains a court-ordered name change.  The new birth certificate must indicate the individual's new name and sex.

Prior to the statute's passage, New Jersey did not permit any amended birth certificate to issue to individuals who underwent SRS.  See Sponsor's Statement to L. 1984, c. 191, § 1.[2]  For

_____

[1] "[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Ben. Guar. Corp. v. White Consol. Industries, Inc., 998 F.2d 1192, 1196 (3rd Cir. 1993).  Here, the Complaint contains repeated references to New Jersey birth certificates.

[2] The sponsor statement is part of the public record and is available at: https://repo.njstatelib.org/bitstream/handle/10929.1/23412/L1984c191.pdf?sequence=1&isAllowed=y (last visited Dec. 13, 2016).  The

example, prior to N.J. Stat. Ann. § 26:8-40.12, a male-to-female transgender individual who underwent SRS could only obtain a birth certificate that read "female, corrected from male." <u>Ibid.</u> That outcome was mandated by N.J. Stat. Ann. § 26:8-54, which requires "corrected" birth certificates to show "information as originally given and the corrected data." <u>Ibid.</u> N.J. Stat. Ann. § 26:8-40.12 permits trans individuals the opportunity to apply for and receive a new birth certificate "of the same general type of the original certificate of birth" that "shows the sex and name of the person as it has been changed." Pursuant to an application under the statute, the original birth certificate and all papers supporting the amendment must be placed under seal, which can only be broken upon judicial order. N.J. Stat. Ann. § 26:8-40.12(d).

Plaintiff filed her initial Complaint on November 18, 2016, arguing that N.J. Stat. Ann. § 26:8-40.12 violates her constitutional rights because the law requires proof that her sex has actually changed before the State will issue an amended birth certificate reflecting the new sex. <u>Compl.</u>, ¶ 4. Plaintiff sought "to change her gender on her New Jersey birth certificate from an original gender assigned at birth to her correct gender." <u>Id.</u> at ¶ 2. The Complaint attempted to assert three claims pursuant to 42 U.S.C. § 1983, the first alleging a violation of the Fourteenth

---

court may consider documents in the public record when reviewing a motion to dismiss. <u>Pension Ben. Guar. Corp</u>, 998 F.2d at 1196.

Amendment's Due Process Clause, the second alleging a violation of the Fourteenth  Amendment's Equal Protection Clause, and the third alleging a violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.

Defendants filed a Motion to Dismiss Plaintiff's complaint on December 28, 2016.  (ECF#5).  Plaintiff opposed the motion on February 21, 2017.  (ECF#17).  After hearing oral argument on August 15, 2017, the court granted Defendants' motion to dismiss by order dated August 16, 2017.  (ECF#57).  In its oral decision, the court found that "the Complaint does not adequately plead claims under the Due Process Clause, Equal Protection Clause, and the Americans with Disabilities Act."  (T31-24 to 32-2).  The court found the factual allegations in the Complaint deficient because Plaintiff alleged that her injuries arose from her inability to amend her gender on her birth certificate, but she did not plead "whether the birth certificate lists Plaintiff's 'gender', as opposed to Plaintiff's 'sex'."  (T32-5 to 7).  The court noted that it did not reach a determination on the legal definitions of "sex" and "gender", but rather found that the Complaint failed to adequately address the definitions in construing the challenged statute and the Defendants' alleged conduct.  (T33-4 to 9).  The court also did not reach the merits of Plaintiff's arguments under the Due Process Clause, the Equal Protection Clause, or the ADA.

(T33-10 to 13).   Finally, as to the minimum factual required allegations, the court noted:

> At minimum, the Complaint must indicate the specific contents of Plaintiff's birth certificate along with the precise terminology used, whether it be sex or gender.  Further, especially given Plaintiff's acknowledgment of the difference between the two terms in the opposition papers and at oral argument, Plaintiff must identify the precise injunctive relief Plaintiff seeks as it relates to those two terms in order to provide Defendants with proper notice of Plaintiff's claims—such as, whether Plaintiff is requesting an additional gender designation in addition to sex on the birth certificate, or whether Plaintiff seeks to amend the "sex" determination.  Further, if Plaintiff seeks to plead that the birth certificate's "sex" designation encompasses "gender" in some manner, Plaintiff must set forth the factual allegations that support Plaintiff's claim and may not amend the Complaint through opposition papers on a motion to dismiss.

> [T33-13 to 34-5].

The court thus granted Defendants' motion to dismiss without prejudice and gave Plaintiff leave to file an amended complaint. (T34-17 to 20).  Plaintiff subsequently filed an Amended Complaint on September 22, 2017.  (ECF#62).   In the Amended Complaint, Plaintiff defines sex as "a classification of a person as male or female based on external male or female anatomical organs or structures or the surgical construction of external male or female anatomical structures of a person."  Amended Compl., ¶ 3. She defines gender as "a person's classification of themselves as male,

6

female or other." Amended Compl., ¶ 4. She then clarifies that her claims are based on the premise that she has a "constitutional and statutory right to have her gender recognized on her birth certificate, as it is on other fundamental identification documents where the state takes an active interest in their use and maintenance." Amended Compl., ¶ 12. Thus, she claims that Defendants' actions in not including gender on her birth certificate violate her substantive and procedural due process rights under the Fourteenth Amendment, deny her equal protection of the law under the Fourteenth Amendment, violate the Americans with Disabilities Act and violate the Rehabilitation Act of 1973. Amended Compl., ¶ 15.

As each of these arguments are meritless, plaintiff again fails to state a claim upon which relief can be granted. Thus, this motion to dismiss follows.

## STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the reviewing court must accept all well pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Mortensen v. First Fidelity Savings and Loan Assoc., 549 F.2d 884, 891 (3d Cir. 1977). A court will not, however, accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal

conclusions cast in the form of factual allegations.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a motion to dismiss. Ibid.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Sheridan v. NGK Metals Corp., 609 F.3d 239, 263 n.27 (3d Cir. 2010) (quoting Ashcroft v. Iqbal, supra, 556 U.S. at 678).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (quoting Iqbal, supra, 556 U.S. at 678).

## ARGUMENT

### POINT I

**PLAINTIFF'S SUBSTANTIVE AND PROCEDURAL DUE PROCESS CLAIMS FAIL BECAUSE NO FUNDAMENTAL RIGHT OR PROPERTY RIGHT IS IMPLICATED AND N.J. Stat. Ann. § 26:8-40.12 WITHSTANDS RATIONAL BASIS SCRUTINY.**

The Complaint's First Count asserts that N.J. Stat. Ann. § 26:8-40.12 violates the Fourteenth Amendment's Due Process clause. This claim should be dismissed because the statute does not burden

8

any fundamental rights and satisfies the rational basis standard of review.

### A. <u>N.J. Stat. Ann. § 26:8-40.12 Does Not Burden Any Fundamental Right.</u>

The first analytical step in any substantive due process challenge to legislation is to determine the applicable level of scrutiny. <u>Sammon v. New Jersey Bd. of Med. Examiners</u>, 66 F.3d 639, 643-44 (3d Cir. 1995). If the statute does not burden a fundamental right, the statute withstands a substantive due process challenge if the State identifies a "legitimate state interest that the legislature could rationally conclude was served by the statute." <u>Nicholas v. Pennsylvania State Univ.</u>, 227 F.3d 133, 139 (3d Cir. 2000) (internal citation and quotation omitted). If the challenged statute burdens a "fundamental right," the statute must satisfy a heightened level of scrutiny to pass constitutional muster. <u>Alexander v. Whitman</u>, 114 F.3d 1392, 1403 (3d Cir. 1997) (citation omitted).

Fundamental rights are rights that are "deeply rooted in the Nation's history and tradition" and interests "implicit in the concept of ordered liberty like personal choice in matters of marriage and family." <u>Nicholas v. Pa. State Univ.</u>, 227 F.3d 133, 141 (3d Cir. 2000) (internal citations and quotations omitted). The Fourteenth Amendment's protection of "fundamental rights" extends to "all fundamental rights comprised within the term

9

liberty." Planned Parenthood of Se. Pennsylvania v. Casey, 505 U.S. 833, 847 (1992). These rights include the right to be free:

> from bodily restraint but also the right ... to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of [their] own conscience[s], and generally to enjoy those privileges long recognized ... as essential to the orderly pursuit of happiness by free men.
>
> [Board of Regents v. Roth, 408 U.S. 564, 572 (1972) (quoting Meyer v. Nebraska, 262 U.S. 390, 399 (1923))].

The Fourteenth Amendment "promise[s] ... that there is a realm of personal liberty which the government may not enter." Planned Parenthood of Se. Pennsylvania, 505 U.S. at 847. "The result is a right of personal privacy, or a guarantee of certain areas or zones of privacy [.]" Alexander, 114 F.3d at 1403 (citation omitted). The Third Circuit has recognized that the Fourteenth Amendment generally protects two types of privacy rights: (1) "the individual interest in avoiding disclosure of personal matters," and (2) "the right to autonomy and independence in personal decision-making." Malleus v. George, 641 F.3d 560, 564-65 (3d Cir. 2011).

To determine whether information is entitled to privacy protections against disclosure, the Third Circuit considers "whether it is within an individual's reasonable expectations of confidentiality. The more intimate or personal the information, the

10

more justified is the expectation that it will not be subject to public scrutiny." Id. at 563 (quoting Fraternal Order of Police v. City of Philadelphia, 812 F.2d 105, 112–13 (3d Cir. 1987)). Sexual information, medical information, and some financial information have been deemed to be protected. Id.; see United States v. Westinghouse Elec. Corp., 638 F.2d 570, 577 (3d Cir. 1980) (a private employee's medical information when sought by the government); Fraternal Order of Police, Lodge No. 5 v. City of Phila., 812 F.2d 105, 113 (3d Cir. 1987) (medical, financial and behavioral information relevant to a police investigator's ability to work in dangerous and stressful situations); Doe v. Se. Pa. Transp. Auth., 72 F.3d 1133, 1138 (3d Cir. 1995) (a public employee's medical prescription record); Gruenke v. Seip, 225 F.3d 290, 301 (3d Cir. 2000) (a minor student's pregnancy status); Sterling v. Borough of Minersville, 232 F.3d 190, 196 (3d Cir. 2000) (sexual orientation); Doe v. Delie, 257 F.3d 309, 317 (3d Cir. 2001) (an inmate's HIV-positive status).

Even when a privacy interest in certain information exists, however, "a person's right to avoid disclosure of personal matters is not absolute." Doe v. Luzerne Cty., 660 F.3d 169, 178 (3d Cir. 2011). If the government interest in disclosure outweighs an individual's privacy interest, disclosure may be required. Id. In making that determination, the Third Circuit applies a "flexible balancing test" and considers the following factors:

11

[1] the type of record requested, [2] the
information it does or might contain, [3] the
potential for harm in any subsequent
nonconsensual disclosure, [4] the injury from
disclosure to the relationship in which the
record was generated, [5] the adequacy of
safeguards to prevent unauthorized disclosure,
[6] the degree of need for access, and [7]
whether there is an express statutory mandate,
articulated public policy, or other
recognizable public interest militating toward
access.

[Id.].

With respect to the second recognized type of privacy, the
right to autonomy and independence in personal decision-making, the
court has deemed protected "personal decisions relating to
marriage, procreation, contraception, family relationships, child
rearing, and education." Planned Parenthood of Se. Pennsylvania,
505 U.S. at 851 (abortion access); see also Obergefell v. Hodges,
135 S. Ct. 2584 (2015) (same-sex marriage); Loving v. Virginia, 388
U.S. 1, 12 (1967) (interracial marriage); Griswold v. Connecticut,
381 U.S. 479 (1965) (contraception access).  These rights derive
from an individual's general fundamental right to make "the most
intimate and personal choices" a person can make in his or her
lifetime, Planned Parenthood of Se. Pennsylvania, 505 U.S. at 851,
without "unjustified government interference." Carey v. Population
Servs., Int'l, 431 U.S. 678, 684–85 (1977).

Here, the Complaint asserts numerous alleged rights in a
conclusory fashion, which can be divided into the following

12

categories: (1) the right to refuse surgery, (2) the right to express her identity, (3) the right to have gender reflected on her birth certificate, (4) the right to personal autonomy and to make personal decisions, and (5) the right to keep her sex private. These asserted rights are either not fundamental or are not implicated by N.J. Stat. Ann. § 26:8-40.12.

Plaintiff first alleges that the statute burdens her right to "refuse unwanted surgery without any legal basis or justification," and the right to "undergo or not Sex Reassignment Surgery or any surgery or other procedure." Amended Compl., ¶ 99. The cases in which courts have recognized this right all involve forced surgery. See Cruzan v. Director, Missouri Dep't of Health, 497 U.S. 261 (1990) (right to refuse unwanted medical treatment); Rochin v. California, 342 U.S. 165 (1952) (protection against forced stomach pumping). In contrast, N.J. Stat. Ann. § 26:8-40.12 simply allows an individual who has undergone SRS to apply for and obtain a new birth certificate to reflect his or her new sex. It does not mandate that anyone obtain that surgery, nor does it place any obstacle in the way of an individual who seeks to undergo that surgery. The asserted right is simply not implicated by the statute.

Second, Plaintiff alleges that N.J. Stat. Ann. § 26:8-40.12 burdens her right to "define and express her identity," and her right to express her gender as she sees fit. Amended Compl., ¶ 99.

13

The Third Circuit has not recognized a fundamental right to "define and express" an identity.  This phrase appears to derive from the opening sentence of the Supreme Court's Obergefell decision. Obergefell, supra, 135 S. Ct. at 2593 ("The Constitution promises liberty to all within its reach, a liberty that includes certain specific rights that allow persons, within a lawful realm, to define and express their identity.").  However, this language does not enumerate or recognize a new right.  Indeed, the Obergefell decision is premised upon the fundamental right of "personal choice regarding marriage," which it characterized as an integral part of the Fourteenth Amendment's protection for intimate and personal life choices.  Id. at 2600.  Thus, the opening line's reference to a right to "define and express" an identity is *dicta* at best. Certainly, if the Court had intended to create or recognize a new fundamental right that could form the basis of new Fourteenth Amendment litigation, it would have done so more clearly and explicitly.

Third, Plaintiff alleges that the statute deprives her of the fundamental "right to have her gender legally recognized," the right "to have governmental bodies who issue and maintain her unique fundamental identification documents recognize her gender", the "right to have those bodies . . . remove incorrect or hurtful information about her, such as her birth certificate's designation of her sex as male," and the "right to have her gender recognized

14

on her birth certificate, either under a gender heading or under the broader definition of 'sex' (as well as in all documents relating to her birth certificate)." Amended Compl., ¶ 99. Essentially, Plaintiff argues that she has a fundamental right to have her gender included on her birth certificate. But there is no such fundamental right. The right to have gender included on a birth certificate can hardly be said to be "deeply rooted in the Nation's history and tradition"; nor is it "implicit in the concept of ordered liberty." See Nicholas, 227 F.3d at 141.  Indeed, courts have repeatedly held that there is no fundamental right to obtain a birth certificate reflecting specific information in other contexts. For instance, in Adar v. Smith, 639 F.3d 146, 162 (5th Cir. 2011), the Fifth Circuit Court of Appeals held that Louisiana's refusal to issue a revised birth certificate to recognize the fact of adoption does not implicate a fundamental right. In In re Michaela Lee R., 756 A.2d 214, 232 (Conn. 2000), the Supreme Court of Connecticut held that there is no fundamental right to change parental information on a birth certificate. And in Does 1, 2, 3, 4, 5, 6, & 7 v. State, 993 P.2d 822, 836 (Or. 1999), the Supreme Court of Oregon held that a birth mother does not have a fundamental right to shield her name from a birth record, because any privacy interest regarding the factual circumstances of a birth does not rise to the level of a fundamental right.

15

Fourth, Plaintiff alleges that the statute burdens her rights to bodily integrity, personal autonomy, gender autonomy, and her right to "make certain private decisions" without government intrusion. Compl., ¶ 82, 99. But nothing in the Complaint suggests that the statute implicates any intimate or personal life choices within the Fourteenth Amendment's zone of privacy, such as contraception, marriage, or the decision to procreate and/or create a family.  The statute simply states that if an individual physically changes their anatomical sex through SRS, then that individual may apply for an amended birth certificate to reflect that physical change.  Thus, the statute does not burden any personal or intimate life choices in any way.  Rather, it merely provides a way for the birth record to reflect the intimate choice to physically change sex if and when that decision is made.

Finally, Plaintiff alleges that the statute violates the "right to keep private intimate facts about herself including her gender and body parts." Amended Compl., ¶ 99.  She claims that including her sex on her birth certificate causes her "to fear for her safety because of the Defendants' outing of her as trans in her birth certificate, noting to the public that Jane was born with a male body, despite her gender and appearance now." Amended Compl., ¶ 14.

An individual's sex is not entitled to privacy protections. An individual does not have a reasonable expectation of

confidentiality regarding his or her sex because sex, rather than gender, has historically been documented on birth certificates, as only sex can be ascertained at birth.  See M. T. v. J. T., 355 A.2d 204, 205 (N.J. App. Div. 1976) (quoting expert witness who testified as to "'very little disagreement' on the fact that gender identity generally is established" by the age of 3 to 4 years). Indeed, Plaintiff does not claim that an individual has an expectation of confidentiality with respect to sex at birth, when it is recorded on the birth certificate.  Unlike the other cases the Third Circuit has considered involving privacy interests in information the government requires to be disclosed, Plaintiff's Complaint does not challenge the initial disclosure of the information to the State.  Therefore, there can be no expectation of confidentiality with respect to one's sex, and thus no privacy interest in that information.

Moreover, even if an expectation of confidentiality were found, "a person's right to avoid disclosure of personal matters is not absolute," and must be weighed against the government's interest in disclosure.  Luzerne Cty., 660 F.3d at 178.  Here, the factors the Third Circuit considers in the balancing test weigh heavily in favor of the government accurately recording an individual's sex on his or her birth certificate.   See id.

The government has a significant interest in maintaining accuracy in birth records throughout an individual's life.  As

17

discussed below in Section I(B), New Jersey ensures that birth records accurately reflect an individual's sex to reduce the likelihood of fraud and identity theft.  As such, even if plaintiff has a privacy interest in preventing disclosure of her sex, it is outweighed by the government's interest in disclosure.

As N.J. Stat. Ann. § 26:8-40.12 does not interfere with any fundamental right, the statute is constitutional under the Due Process Clause provided it is rationally related to a legitimate state interest.  <u>Nicholas v. Pennsylvania State Univ.</u>, <u>supra</u>, 227 F.3d at 139.

## B. <u>N.J. Stat. Ann. § 26:8-40.12 Withstands Rational Basis Review.</u>

A statute will be considered constitutional under rational basis review if "any reasonably conceivable set of facts [exist] that could provide a rational basis for" the statute.  <u>FCC v. Beach Communications</u>, 508 U.S. 307, 313 (1993).  Legislation "enjoys a resumption of validity" under this standard, and to prevail, a plaintiff must "must negate every conceivable justification" to prove that the statute is "wholly irrational."  <u>Brian B. ex rel. Lois B. v. Com. of Pennsylvania Dep't of Educ.</u>, 230 F.3d 582, 586 (3d Cir. 2000).  "To determine whether a rational basis exists at the motion to dismiss stage, a court may consider the defendant's motion, the plaintiff's complaint, and any other admissible documents."  <u>Brace v. Cty. of Luzerne</u>, 873 F. Supp. 2d 616, 630-31

(M.D. Pa. 2012), aff'd, 535 F. App'x 155 (3d Cir. 2013).

The government's interest in ensuring the accuracy of vital records is well-settled. See Ampadu v. U.S. Citizenship & Immigration Servs., Dist. Dir., 944 F. Supp. 2d 648, 656 (C.D. Ill. 2013) (recognizing the "public interest in having accurate records on vital statistics."); J.R. v. Utah, 261 F. Supp. 2d 1268, 1294 (D. Utah 2002) ("The State also has a significant interest in the accuracy of the records it keeps, particularly vital records like birth certificates."); In re Michaela Lee R., 756 A.2d 214, 233 n.32 (2000) ("We have acknowledged the importance of the vital records statutes and the state's interests in maintaining the accuracy of those records, and we reiterate that conclusion here."); In re Dohl & Neilsen Marriage License, 7 Pa. D. & C.2d 312, 313 (Pa. Orph. 1957) ("It is of the utmost importance and in the public interest, that marriage, birth and similar vital records be accurately prepared and maintained."). The people of New Jersey have charged the Department of Health with ensuring the prompt and accurate registration of all vital records. N.J. Stat. Ann. § 26:8-23. When sex is recorded on a birth certificate, it refers to the physical/anatomical attributes of the newborn at the time of birth. Any change to that anatomical description, without an associated physical change, creates a discrepancy. In other words, if Plaintiff, who was born anatomically as a male, were able to change the sex on her birth certificate without submitting proof of

19

a physical sex change, her birth record would reflect that she is anatomically a female even though she retains the genitalia of a male.  Thus, the relief Plaintiff seeks would constitute a State-sanctioned inaccuracy.  Requiring proof of SRS is a rational way to ensure that the anatomical descriptor on a birth certificate remains accurate and consistent with the individual's anatomical sex.

New Jersey's interest in ensuring that the anatomical sex designation on birth certificates is accurate also advances the related, significant governmental interest in reducing the likelihood of fraud and identity theft.  A 2000 study by the federal Department of Health and Human Services, Office of the Inspector General, explained that birth certificates are utilized as "breeder documents" needed to create new identities.  OIG Report, Birth Certificate Fraud (Sept. 2000), at ii.[3]  The most frequent and most difficult fraud to detect, according to OIG, is the result of "genuine birth certificates held by imposters," which accounted for between 85 and 90 percent of birth certificate fraud encountered by the Immigration and Naturalization Services and Passport Services staff at the time of the report.  Ibid.  If the name and sex designation on a birth certificate could be changed without any tether to the individual's anatomical features, as

_____

[3]  This report is publicly available on the OIG website at https://oig.hhs.gov/oei/reports/oei-07-99-00570.pdf (last visited December 13, 2016).

20

Plaintiff suggests, then a bad actor could abuse the system to create several versions of birth certificates to use for nefarious purposes, such as identify theft, defrauding government benefits programs, and defrauding immigration officials.

The OIG report also noted that "delays in matching death and birth records can make the identities of many deceased persons easy to assume between the time the person dies and the time the death and birth records are matched." OIG Report, <u>Birth Certificate Fraud</u>, at iii. A deceased individual having the physical genitalia of a male, but a birth certificate that lists the sex as female, could create delays in matching birth and death records. OIG explains that such delays increase the risk of fraud, because the deceased individual's identity could be assumed during that period. <u>Ibid.</u>

N.J. Stat. Ann. § 26:8-40.12 is designed to help prevent such fraudulent practices. By requiring proof of an anatomical sex change before changing the name and anatomical sex designation on a birth certificate, the statute makes it far more difficult for individuals to commit fraud by obtaining different versions of otherwise genuine birth certificates.

New Jersey is not alone in pursuing the significant governmental interests in ensuring accurate vital statistic records and preventing fraud. New Jersey is joined by at least twenty states in requiring, by statute and/or regulation, proof of SRS

21

before changing the birth sex on a birth certificate.[4]   These
states all ensure that the physical description of birth sex
remains accurate until receiving proof that the anatomical sex has
changed.  See In re Heilig, 816 A.2d 68, 87 (Md. Ct. of App. 2003)
(observing that the "point" of statutes requiring surgery is to
ensure that "the change has been effected, in that at least (1) the
person's external genitalia have been brought into consistency with
that indicative of the new gender and with other determinants of
gender, and (2) the change is regarded as permanent and
irreversible.").  Idaho, Kansas, Tennessee, and Ohio do not permit
any birth certificate amendments even after SRS, and allow
corrections only based upon errors made at the time of recording.[5]

---

[4] Alabama (Ala. Code § 22-9A(d)), Arizona (Ariz. Rev. Stat. § 36-
337(A)(3), Beatie v. Beatie, 333 P.3d 754, 759 (Ariz. Ct. App.
2014)); Arkansas (Ark Code. Ann. § 20-18-307(d)); Colorado (Colo.
Rev. Stat. § 25-2-115(4)); Connecticut (Conn. Ge. Stat. § 19a-42;
Conn. Agencies Regs. § 19a-41-9(e)); Delaware (Del. Admin. Code
4205 § 10.9.4); Georgia (O.C.G.A. § 31-10-23); Kentucky (KRS §
213.121(5)), Louisiana (La. R.S. § 40:62(A)); Massachusetts (ALM GL
ch. 46, § 13(e)(1)); Michigan (Mich. Comp. Laws Ann. §
333.2831(c)); Missouri (Mo. Ann. Stat. § 193.215(9)); Montana
(Mont. Code Ann. § 50-15-204; Admin. R. Mont. 37.8.311(5));
Nebraska (Neb. Rev. Stat. § 71-604.01); New Hampshire (RSA 5-C:87);
New Mexico (N.M. Stat. Ann. § 24-14-25(D)); North Carolina (N.C.
Gen. Stat. § §  130A-118(b) (4)); North Dakota (N.D. Cent. Code §
23-02.1-25; N.D. Admin. Code § 33-04-12-02); Virginia (Va. Code
Ann. § 32.1-269), and Wisconsin (Wis. Stat. Ann. § 69.15).

[5] Idaho Code § 39-250 and Idaho Admin. Code § 16.02.08.201 and Way
Out West: A Comment Surveying Idaho State's Legal Protection of
Transgendered and Gender Non-Conforming Individuals, 49 Idaho L.
Rev. 587, 611 (2013); K.A.R. § 28-17-20(b)(1)(A)(i) (Kansas rule
permitting amendment only if proof is submitted that sex was
incorrectly recorded at the time of birth); Ohio Rev. Code §

N.J. Stat. Ann. § 26:8-40.12 thus advances well-settled governmental interests in ensuring accurate vital records and reducing fraud and identity theft.  The statute's requirements ensure that the anatomical sex descriptor on birth certificates remains accurate.  Thus, the statute is rationally related to the State's interests in combating fraud and ensuring accurate records. The Complaint's First Count should be dismissed as a matter of law.

### C. <u>N.J. Stat. Ann. § 26:8-40.12 Does Not Violate the Right to Procedural Due Process.</u>

Plaintiff claims in Count I of her Amended Complaint that the Statute violates her right to procedural due process, though she provides no explanation of that claim beyond the statement that she is "entitled to a procedure that simply and confidentially provides her with that document upon her request."  <u>Amended Compl.</u>, ¶ 100.

To the extent that Plaintiff claims she is being deprived of a property right to a birth certificate reflecting her gender, this claim must be dismissed because she fails to identify any source of that property right in her Complaint.  "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the . . . Fourteenth Amendment." <u>Mathews v. Eldridge</u>, 424 U.S. 319, 332 (1976).  "The Fourteenth

---

3705.15 <u>and</u> <u>In re Declaratory Relief for Ladrach</u>, 513 N.E.2d 828, (Ohio P. Ct. 1987) (similar rule, for Ohio); Tenn. Code Ann. § 68-3-203(d) (barring birth certificate amendments for individuals who undergo SRS).

Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits. These interests -- property interests -- may take many forms." Id. at 576.

For a property interest in a benefit to be found, a person clearly must have "more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Regents v. Roth, 408 U.S. 564, 577 (1972). Property rights are created not by the Constitution, but by independent sources such as state law in the form of "rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Id.

Here, Plaintiff has cited no statute or regulation giving rise to a property right to a birth certificate containing her gender, let alone a source of a "legitimate claim[] of entitlement" to such a document. To the contrary, she claims that N.J. Stat. Ann. § 26:8-40.12 deprives her of her right to a birth certificate that reflects her gender. Such a legislative deprivation, however, raises no procedural due process concerns because citizens' rights "are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule." Bi-Metallic Inv. Co. v. State Board of Equalization, 239 U.S. 441, 445 (1915). Therefore, Plaintiff fails to state a claim for a violation of her procedural due process rights.

24

## POINT II

### PLAINTIFF FAILS TO STATE A COGNIZABLE EQUAL PROTECTION CLAIM.

The Complaint's Second Count asserts an Equal Protection claim that is, much like her due process claim, meritless as a matter of law.  The Equal Protection Clause of the Fourteenth Amendment forbids a state from "denying to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV, § 1. "This is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.' ' Artway v. Attorney General of State of N.J., 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439 (1985)).

Here, N.J. Stat. Ann. § 26:8-40.12 does not implicate the Equal Protection Clause because it does not differentiate between similarly-situated individuals.  The Complaint asserts that the statute discriminates because it does not allow "gender accurate" birth certificates to issue to trans people with GD who have not or will not undergo SRS while "providing gender accurate birth certificates to all other individuals." Amended Compl., ¶ 105. Plaintiff further alleges that the statute discriminates against trans people who want their gender legally recognized on their birth certificates.  Amended Compl., ¶ 104.  Contrary to Plaintiff assertions, the statute does not discriminate against any group of

25

people; birth certificates reflect sex, and not gender, for all individuals.  Moreover, N.J. Stat. Ann. § 26:8-40.12 is premised upon actual physical differences between men and women, and is equally applicable to all individuals with a birth certificate to ensure that the birth certificate's physical sex description remains accurate.  The statute does not classify or discriminate against trans individuals in any way.  It merely allows for the anatomical description on a birth certificate to change after an individual changes his or her anatomical sex.

The Supreme Court has "consistently upheld statutes where gender classification is not invidious, but rather realistically reflects the fact that the sexes are not similarly situated in certain circumstances."  Michael M. v. Superior Court of Sonoma Cty., 450 U.S. 464, 469 (1981).  This is because the Equal Protection Clause "does not 'demand that a statute necessarily apply equally to all persons' or require 'things which are different in fact ... to be treated in law as though they were the same.'"  Ibid. (quoting Rinaldi v. Yeager, 384 U.S. 305, 309 (1966)).  If the difference in treatment is the result of a "demonstrable" difference in situation, rather than "administrative convenience and outworn clichés," the statute does not contain an impermissible classification.  Parham v. Hughes, 441 U.S. 347, 355 (1979).

Here, N.J. Stat. Ann. § 26:8-40.12 does not implicate

26

Plaintiff's Equal Protection rights.  The statute simply recognizes the actual reproductive and anatomical differences between the two sexes for universal designation on birth certificates.  The statute does not classify individuals, but rather establishes an administrative amendment process to comprehensively ensure that the sex designation on birth certificates comports with the anatomical sex of the individual.  As previously explained, ensuring congruency between the physical description on a birth certificate and the actual physiology of the individual is important for various purposes.  Thus, the statute does not violate Plaintiff's Equal Protection rights because the statute is grounded in actual reproductive and physical features.

Moreover, even if N.J. Stat. Ann. § 26:8-40.12 were interpreted as somehow classifying trans people or trans people with GD, the law withstands scrutiny under the Equal Protection Clause.  The first step in analyzing an equal protection claim is to determine the applicable level of scrutiny.  Memorial Hosp. v. Maricopa Cnty., 415 U.S. 250, 253 (1974); Donatelli v. Mitchell, 2 F. 3d 508, 513 (3d Cir. 1993).  A statute that classifies a "suspect" class, such as by race or national origin, or impacts certain fundamental constitutional rights, is subject to "strict" scrutiny.  City of Cleburne, 473 U.S. at 439.  A statute that classifies a "quasi-suspect" class, such as gender or illegitimacy, is subject to "intermediate" scrutiny.  Clark v. Jeter, 486 U.S.

456, 461 (1988).  A statute that does not classify a suspect class and does not infringe upon fundamental rights is subject to the rational basis standard of review.  F.C.C. v. Beach Communications, Inc., 508 U.S. 307 (1993); Chapman v. United States, 500 U.S. 453, 465 (1991).

As recently observed in this Circuit, "neither the United States Supreme Court nor the Third Circuit Court of Appeals has recognized transgender as a suspect classification under the Equal Protection Clause." Johnston v. Univ. of Pittsburgh of Com. Sys. of Higher Educ., supra, 97 F. Supp. 3d at 668–69.  Therefore, Plaintiff's Equal Protection claim, assuming arguendo that N.J. Stat. Ann. § 26:8-40.12 implicates the Equal Protection clause, "is reviewed under the rational basis standard." Ibid.  As previously demonstrated, the statute withstands scrutiny under the rational basis standard.

And finally, even if the statute were viewed as discriminating against trans people, and even if trans people were considered a "quasi-suspect class," the statute is sustainable.  If a statute discriminates against a quasi-suspect class, the "intermediate" level of scrutiny applies.  Clark v. Jeter, supra, 486 U.S. at 461.  To withstand intermediate scrutiny, a classification must be "substantially related to an important government interest." Ibid.  Surely, ensuring accurate records and combating fraud and identity theft are important governmental interests.  Cf. Bowen v. Roy, 476

28

U.S. 693, 730 (1986) (observing that "prevention of welfare fraud is concededly a compelling interest."); F.E.R. v. Valdez, 58 F.3d 1530 (10th Cir. 1995) (recognizing state interest of ending fraud in Medicaid program as "compelling"); Alcaraz v. Block, 746 F.2d 593 (9th Cir. 1984) (government had compelling interest in reducing fraud in entitlement programs).   And as previously discussed, requiring proof of SRS is the only means to ensure that the individual's anatomical sex has changed.   Therefore, N.J. Stat. Ann. § 26:8-40.12 satisfies the intermediate scrutiny standard, and the Complaint's Second Count should be dismissed.

### POINT III

**PLAINTIFF FAILS TO STATE A COGNIZABLE CLAIM UNDER THE ADA OR THE REHABILITATION ACT BECAUSE DEFENDANTS HAVE NOT DISCRIMINATED AGAINST PLAINTIFF BASED ON A DISABILITY, AND GENDER DYSPHORIA IS NOT A DISABILITY UNDER EITHER STATUTE.**

The Amended Complaint's Third and Fourth Counts allege an ADA claim pursuant to 42 U.S.C. § 12132 and a Rehabilitation Act claim pursuant to 28 U.S.C. § 794.   Amended Compl. ¶¶ 27, 36.

Plaintiff attempts to state a claim under Title II of the ADA, which provides that "[s]ubject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a

29

public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

The ADA's protections are available only to "qualified individual[s] with a disability." Bowers v. NCAA, 475 F.3d 524, 553 n.32 (3d Cir. 2007); Young v. Sunbury Police Dep't, 160 F. Supp. 3d 802, 810 (M.D. Pa. 2016); Bowers v. Nat'l Collegiate Athletic Ass'n, 118 F. Supp. 2d 494, 511 (D.N.J. 2000), opinion amended on reargument, 130 F. Supp. 2d 610 (D.N.J. 2001).

The ADA sets forth a general definition of "disability," 42 U.S.C. 12102, but also includes specific exemptions. Transsexualism, "gender identity disorders not resulting from physical impairments," and "other sexual behavior disorders" are specifically excluded from the statute's definition of "disability." 42 U.S.C. 12211.

Similar to the ADA, Section 504 of the Rehabilitation Act provides that:

> [n]o otherwise qualified individual with a disability in the United States, . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.
>
> 29 U.S.C. § 794(a).

30

Like the ADA, the Rehabilitation Act explicitly excludes from the definition of "individual with a disability," individuals with "transvestism, transsexualism, pedophilia, exhibitionism, voyeurism, gender identity disorders not resulting from physical impairments, or other sexual behavior disorders." 29 U.S.C.S. § 705(20)(f).

"The language and implementing regulations of the ADA and [Rehabilitation Act] are virtually the same." Frederick L. v. Dep't of Pub. Welfare of the Commonwealth of Pa., 364 F.3d 487, 490, fn.2 (3d Cir. 2004). Accordingly, this Court has "construed [the laws] in light of their close similarity of language and purpose." Id. at 491 (citing Helen L. v. DiDario, 46 F.3d 325, 330-32 (3d Cir. 1995)).

To prove a violation of Title II of the ADA, a party must establish: "(1) that he is a 'qualified individual' with a disability; (2) that he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to his disability." Hargrave v. Vermont, 340 F.3d 27, 34-35 (2d Cir. 2003). These requirements apply with equal force to claims brought under the Rehabilitation Act. Id. at 35. Plaintiff fails to adequately state a claim under the ADA or the Rehabilitation Act because she fails to allege exclusion or discrimination based on a disability, and her alleged

31

disability, GD, does not qualify as a disability under either statute.

Plaintiff alleges that N.J. Stat. Ann. § 26:8-40.12 discriminates against a subgroup by "providing gender inaccurate birth certificates without possibility of correction to trans individuals with GD, but who have not or will not undergo SRS, while at the same time providing gender accurate birth certificates to all other persons." Amended Compl. ¶ 112, 122.  As explained above, birth certificates reflect sex rather than gender.  They provide neither gender accurate nor gender inaccurate information, as they do not include gender at all.  As such, plaintiff has failed to allege discrimination on the basis of GD.  Thus, the Amended Complaint states no cognizable ADA or Rehabilitation Act claim because N.J. Stat. Ann. § 26:8-40.12 does not discriminate due to disability.

Moreover, Plaintiff premises her claims upon the allegation that "gender dysphoria" (GD) is a disability under the ADA and the Rehabilitation Act.  Compl., ¶¶ 69-71.  That allegation is plainly incorrect.  In 2013, GD replaced "gender identity disorder" in the fifth edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM-5) (2013).  Johnston, supra, 97 F. Supp. 3d at 662 n.4.  Thus, GD and gender identity disorder are different terms for the same condition.  As gender identity disorder/GD is expressly excluded from the ADA's and the Rehabilitation Act's definition of

32

disability, Plaintiff cannot sustain a claim under the ADA or the Rehabilitation Act.

Therefore, the Court should dismiss the Complaint's Third and Fourth Counts.[6]

**POINT IV**

**PLAINTIFF'S CLAIMS FOR MONETARY DAMAGES MUST BE DISMISSED BECAUSE DEFENDANTS ARE ENTITLED TO SOVEREIGN IMMUNITY AND ARE NOT PERSONS UNDER § 1983.**

Plaintiff improperly seeks an award of monetary damages against the State defendants.  The Eleventh Amendment to the U.S. Constitution bars federal jurisdiction over lawsuits brought against a state and state officers. U.S. Const. Amend. XI; see also Pennhurst State Sch. and Hosp. v. Halderman, 465 U.S. 89, 97-98 (1984).  Here, all the Defendants are entitled to sovereign immunity as they are either State agencies or State officials sued in their official capacities.

Even if the State defendants were not immune under the Eleventh Amendment, Plaintiff cannot sustain Section 1983 claims for monetary damages.  A state or state official acting in his or her official capacity is immune from Section 1983 damages-

---

[6] The Complaint also references the New Jersey Law Against Discrimination (LAD), N.J. Stat. Ann. § 10:5-12 et seq., but does not expressly assert an LAD claim. Amended Compl., ¶ 87.  To the extent that the Court interprets the Complaint as asserting an LAD claim, that claim cannot be sustained as a matter of law because the LAD provides no mechanism to challenge another New Jersey statute on the basis of discrimination.

liability, as neither "are 'persons' under § 1983." <u>Will v. Mich.</u>
<u>Dep't of State Police</u>, 491 <u>U.S.</u> 58, 71 (1989).  Therefore, to the
extent that Plaintiff seeks any monetary relief, that request for
relief must be dismissed.

<u>**CONCLUSION**</u>

For the foregoing reasons, the court should dismiss
Plaintiff's Amended Complaint.

Respectfully submitted,

CHRISTOPHER S. PORRINO
ATTORNEY GENERAL OF NEW JERSEY


By:  s/ Melissa Bayly_____
     Melissa Bayly
     Deputy Attorney General
     Attorney for Defendants

Date: November 6, 2017

34