IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____

JANE DOE,

                Plaintiff,

       v.

ARRISI, et. al.

              Defendants.

_____

: Hon. Michael A. Shipp, U.S.D.J.
: Hon. Douglas E. Arpert, U.SM.J.
:
: CIVIL ACTION NO. 3:16-c-v-08640
:
: Motion Day:  December 4, 2017
:
:
:
:

## PLAINTIFF JANE DOE'S BRIEF OPPOSING
## DEFENDANTS' MOTION TO DISMISS

Paul R. Fitzmaurice
Paul R. Fitzmaurice, P.C.
130 Linden Avenue
Haddonfield, NJ 08033

Julie Chovanes, Esq.
Trans Resource Foundation LLC
P.O. Box 4307
Philadelphia, PA 19118

Counsel for Plaintiff

# TABLE OF CONTENTS

PRELIMINARY STATEMENT...............................................................1

I. PLAINTIFF HAS CLARIFIED HER FACTUAL ALLEGATIONS.................2

    A. Plaintiff's Amended Complaint Has Followed the Court's Direction.........2

    B. Defendants Are Harming Ms. Doe by the Statute's Definition
of Sex and Sex Change.........................................................................5

II. BACKGROUND.................................................................................6

III. LEGAL ARGUMENT..........................................................................7

    A. A Review of the Statute Should be in Accordance with
Heightened Scrutiny and Defendants Have Not Rebutted
the Statute's Presumptive Invalidity by Proving
An Important or Compelling Government Interest. ...........................................8

    B. The Proper Level of Scrutiny........................................................9

    C. The Statute Violates Jane Doe's Fundamental Rights
and Her Substantive Due Process Rights.................................................10

    D. The Statute Violates Jane Doe's Right to Procedural Due Process..............11

    E. Jane Doe's Complaint Implicates Two Equal Protection Theories...............13

    F. The Statute's Discrimination Is Not Legally Justified...................................14

    G. The Statute Does Not "Fit" Its Alleged Purpose...........................................19

    H. Gender Dysphoria is a Disability.................................................20

    I. Defendants Are Not Entitled to Sovereign Immunity...................................21

IV. CONCLUSION..................................................................................22

# TABLE OF AUTHORITIES

CASES

Adarand Constr., Inc. v. Pena, 515 U.S. 200 (1995) ......................................................13

Adkins v. City of N.Y., 143 F. Supp.3d 134 (S.D.N.Y. 2015) ........................................15, 16, 17

Ashcroft v. Iqbal, 556 U.S. 662 (2009)..........................................................................7

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ............................................................7

Berkley v. Miller, 2014 U.S. Dist. Lexis 68643 (C.D. Cal. 2014) ...................................11

Bd. of Educ. of the Highland Local Sch. Dist. v. United States Dep't of Educ.,
2016 WL 5372349, at * 17, 2016 U.S. Dist Lexis 131474 *59-60 (S.D. Ohio Sept. 26, 2016)....15

Blatt v. Cabela's Retail, Inc., 2017 WL 2178123 (E.D. Pa. May 18, 2017)............................1, 20

Boddie v. Connecticut, 401 U.S. 371 (1971) ..................................................................9

Bowen v. Gilliard, 483 U.S. 587 (1987) ........................................................................16

Bragdon v. Abbott, 524 U.S. 624 (1998)........................................................................21

City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432 (1985) ....................................16

Clark v. Jeter, 486 U.S. 456 (1988) ...........................................................................15, 16

Cmty. Servs. v. Wind Gap Mun. Auth., 421 F.3d 170 (3d Cir. 2005)...........................13

Conley v. Gibson, 355 U.S. 41 (1957)..........................................................................7

Craig v. Boren, 429 U.S. 190 (1976) .............................................................................15

Darnell v. Lloyd, 395 F. Supp. 1210 (D. Conn. 1975) ..............................................9, 11

Donatelli v. Mitchell, 2 F.3d 508 (3d Cir.1993) ............................................................9

D.R. v. Middle Bucks Area Vocational Technical School, 972 F.2d 1364 (3d Cir. 1992) ..........11

Eisenstadt v. Baird, 405 U.S. 438 (1972) ......................................................................11

Evancho v. Pine-Richland Sch. Dist., 237 F. Supp.3d 267 (W.D. Pa. 2017) ....................1, 15, 18

Ex Parte Young, 209 U.S. 123 (1908)............................................................................21, 22, 23

Fisher v. Univ. of Tex. at Austin, 133 S. Ct. 2411 (2013) ...........................................................19

Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009) ...........................................................7

Frederick L. v. Dep't of Public Welfare, 364 F.3d 487, 491 (3rd Cir. 2004)................................ 20

Georgia v. McCollum, 505 U.S. 42 (1992)...................................................................................15

Glenn v. Brumby, 663 F.3d 1312 (11th Cir. 2011).......................................................................18

Griswold v. Connecticut, 381 U.S. 479 (1965).............................................................................11

Hassan v. City of N.Y., 804 F.3d 277 (3d Cir. 2015) ......................................................14, 16, 19

Hedges v. United States, 404 F.3d 744 (3d Cir. 2005) ................................................................7, 8

Heller v. Doe, 509 U.S. 312 (1993) ............................................................................................14

Human Res. Research Mgmt. Group v.
County of Suffolk, 687 F. Supp.2d 237 (E.D. N.Y. 2010) ............................................................16

Ingraham v. Wright, 430 U.S. 651 (1977) ...................................................................................11

Johnson v. Cohen, 836 F.2d 798 (3d Cir. 1987) ..........................................................................15

Johnston v. Univ. of Pittsburg of Com. Sys. of Higher Educ., 97 F. Supp.3d 657 (W.D. Pa.
2015), appeal dismissed (March 30, 2016)...................................................................................18

Malleus v. George, 641 F.3d 560 (3d Cir. 2011) ........................................................................7, 8

Massarsky v. Gen. Motors Corp., 706 F.2d 111 (3d Cir. 1983) ...................................................13

Mathews v. Eldridge, 424 U.S. 319 (1976) .................................................................................11

MCI Telecomm. Corp. v. Bell Atl. Pennsylvania, 271 F.3d 491 (3d Cir. 2001)....................21, 22

Mississippi Univ. for Women v. Hogan, 458 U. S. 718 (1982)..............................................16, 19

Obergefell v. Hodges, 135 S. Ct. 2584 (2015).......................................................................8, 9, 13

Pavan v. Smith, 137 S.Ct. 2075 (2017) .....................................................................................1, 12

Pennhurst State Sch. and Hosp. v. Halderman, 465 U.S. 89 (1984)........................................21, 22

Planned Parenthood of Southeastern Pa. v. Casey, 505 U. S. 833 (1992) ...............................10, 11

Poe v. Ullman,  367 U.S. 497 (1961) ..........................................................................................9

Price Waterhouse v. Hopkins, 490 U.S. 228 (1989) ...................................................................18

Ramsgate Court Townhome Ass'n v. W. Chester Borough, 313 F.3d 157 (3d Cir. 2002) ............9

Reno v. Flores, 507 U. S. 292 (1993) .........................................................................................10

Romer v. Evans, 517 U.S. 620 (1996) ........................................................................................14

Schmerber v. California, 384 U.S. 757 (1966) ...........................................................................11

Snyder v. Lousiana, 552 U.S. 472 (2008) ...................................................................................14

Sommers v. Budget Mktg., Inc., 667 F.2d 748 (8th Cir.1982),
cert. denied, 471 U.S. 1017 (1985) ...........................................................................................18

Tuan Anh Nguyen v. INS, 533 U.S. 53 (2001) ...........................................................................19

Ulane v. E. Airlines, Inc., 742 F.2d 1081 (7th Cir.1984) ...........................................................18

United States v. Virginia, 518 U.S. 515 (1996) ............................................................10, 15, 19

Village of Arlington Heights v. Met. Hous. Dev. Corp., 429 U.S. 252 (1977) ...........................13

Wengler v. Druggists Mut. Ins. Co., 446 U.S. 142 (1980) ....................................................10, 16

Whalen v. Roe, 429 U.S. 589 (1977) ..........................................................................................11

Whitaker v. Kenosha Unified Sch. Dist., 858 F.3d 1034 (7ᵗʰ Cir. 2017)..............................1, 15, 16

Windsor v. United States, 699 F.3d 169 (2d Cir. 2012) ..............................................................17

STATUTES

N.J. Rev. Stat. § 10:5-12 ..............................................................................................................6

RULES

Fed.R.Civ.Pro 8(a)(2)  ..................................................................................................................7

Fed.R.Civ.P. 12(b)(6)............................................................................................................2, 7, 8

MISCELLANEOUS AUTHORITIES

3 Ronald D. Rotunda & John E. Nowak, Treatise on
Constitutional Law § 18.4 (10th ed. 2012) ..................................................................................13

Sapolsky, R.M., Behave, 216 n. (Penguin 2017) ........................................................................ 4-5

## PRELIMINARY STATEMENT

Defendants' Motion to Dismiss [Dkt. No. 69] seeks to Dismiss Plaintiff Jane Doe's Amended Complaint [Dkt. No. 62, hereinafter "Amend. Compl."]  Plaintiff's Amended Complaint was filed by leave of Court after this Court's dismissal of the original Complaint [Dkt. No. 1] on August 16, 2017 [Dkt. No. 57].  The Court read its decision into the record at a hearing on August 15, 2017.  (The transcript from that hearing is Exhibit A hereto.)  The Court held the Complaint had inadequately presented factual allegations in support of Ms. Doe's claims, and gave her leave to file the Amended Complaint here, as well as directions to correct the deficiencies noted by the Court.  Exhibit A at 30-34.

The Amended Complaint corrects the deficiencies noted by the Court.  For example, the Amended Complaint clarifies Plaintiff's definitions of "sex" and "gender."

Defendants appear to agree that the Amended Complaint meets the Court's directions (*See, e.g.*, Defendants' Brief In Support of Their Motion to Dismiss, Dkt. No. 69 at 6-7, hereinafter "Brief.")

Defendants' present motion is a renewed attack on the merits, repeating much of the Defendants' first Motion to Dismiss [Dkt. No. 5] which Defendants apparently felt was the appropriate approach in light of the Court's statement at the August 15th hearing that it was not deciding the prior Motion to Dismiss on the merits.  However Defendants failed to address newer authority recently decided in this District and elsewhere, all supporting Ms. Doe's position, e.g., *Pavan v. Smith*, 137 S. Ct. 2075 (June 26, 2017); *Whitaker v. Kenosha Unified Sch. Dist.*, 858 F.3d 1024 (7th Cir. 2017); *Evancho v. Pine-Richland Sch. Dist.*, 237 F.Supp 267 (W.D. Pa. 2017), *Blatt v. Cabela's Retail, Inc.*, 2017 WL 2178123 (E.D. Pa. May 18, 2017), as well as authority filed in this case, e.g., the United States Statement of Interest in this case, specifically

supporting Ms. Doe's position regarding the ADA [Dkt. No. 49.]  Moreover, Defendants' new motion, taken largely from Defendants' prior motion, still contains the deficiencies Plaintiff had noted previously, in her response to that motion to dismiss.  [Dkt. No. 50]

Because Defendants have failed to sustain their burden of showing that no claim has been presented, their Motion should be dismissed and the case should be allowed to proceed.

## I.  PLAINTIFF HAS CLARIFIED HER FACTUAL ALLEGATIONS

At the August 15th hearing, the Court found the original Complaint had failed to allege sufficient facts to survive Defendants' Motion to Dismiss, and the Court gave Plaintiff direction as to what would be necessary to meet the factual allegation standard under Fed.R.Civ.Pro. 12(b)(6):

> At minimum, the Complaint must indicate the specific contents of Plaintiff's birth certificate along with the precise terminology used, whether it be sex or gender. Further, especially given Plaintiff's acknowledgment of the difference between the two terms in the opposition papers and at oral argument, Plaintiff must identify the precise injunctive relief Plaintiff seeks as it relates to those two terms in order to provide Defendants with proper notice of Plaintiff's claims—such as, whether Plaintiff is requesting an additional gender designation in addition to sex on the birth certificate, or whether Plaintiff seeks to amend the "sex" determination. Further, if Plaintiff seeks to plead that the birth certificate's "sex" designation encompasses "gender" in some manner, Plaintiff must set forth the factual allegations that support Plaintiff's claim...
> Exhibit A at 33/13 - 34/5.

## A.  Plaintiff's Amended Complaint Has Followed the Court's Direction

The Amended Complaint specifically follows the Court's direction noted above:

*1)  At minimum, the Complaint must indicate the specific contents of Plaintiff's birth certificate along with the precise terminology used, whether it be sex or gender.*

Plaintiff's birth certificate shows her sex as "male."  Amend. Compl ¶2: "Plaintiff Jane

Doe was born in the State of New Jersey and was assigned a male sex on her birth certificate.";
See also *id*. at ¶54 and Exhibit A to the Amended Complaint (a copy of Plaintiff's birth
certificate showing her "SEX" as "Male").

> *2) Plaintiff must identify the precise injunctive relief Plaintiff seeks as it relates to those*
> *two terms...such as, whether Plaintiff is requesting an additional gender designation in*
> *addition to sex on the birth certificate, or whether Plaintiff seeks to amend the "sex"*
> *determination.*

The Amended Complaint identifies the precise injunctive relief Plaintiff seeks, *inter alia*,
a preliminary and permanent injunction ordering Defendants to:

> i. Immediately cease enforcing the Statute;
> ii. Provide gender accurate birth certificates to trans people; and
> iii. Provide notice to any and all persons or entities Defendants may come into contact
> with in administering the Statute that the Statute will no longer be enforced and that the
> State of New Jersey will provide gender accurate birth certificates to trans people.
> Amend. Compl. at p. 23.

The Amended Complaint also seeks that this Court enter a declaratory judgment that:

> - the Statute and Defendants' actions in promulgating and enforcing the Statute and the
> definitions of sex and sex change violate the Due Process and Equal Protection Clauses
> of the 14th Amendment of the United States Constitution, the Americans with
> Disabilities Act, and the Rehabilitation Act, and
> - that the Defendants shall recognize gender on birth certificates.
> Amend. Compl. at p. 23.

Accordingly, by ceasing enforcement of the illegal Statute and its discriminatory

definitions of sex and sex change, and by recognizing gender on birth certificates, the word SEX would be replaced by GENDER, and the person's gender would be identified.

Plaintiff has also pled, in the alternative, that sex has a meaning that is synonymous with gender. Under that meaning, the state could simply adopt that meaning, rather than the incorrect and discriminatory one it has now, cease enforcement of the Statute, and simply have the sex identifier be the person's chosen gender.

Thus Plaintiff is seeking injunctive relief to stop the Defendants' practices under the Statute; to have Defendants provide her with a gender accurate birth certificate, and a declaration that the definitions of "sex" and "sex change" under the Statute are illegal and discriminatory.

As stated in the Amended Complaint, the provision of a "gender accurate" birth certificate may be accomplished in a variety of ways, by a "procedure that simply and confidentially provides her with that [gender accurate] document upon her request." Amend. Compl. ¶¶ 79-80.

> *3)  Further, if Plaintiff seeks to plead that the birth certificate's "sex" designation encompasses "gender" in some manner, Plaintiff must set forth the factual allegations that support Plaintiff's claim.*

"Gender" means a person's self-conception. Sex means a person's external body characteristics. So with Jane Doe and other trans people, the body's sex is different than the mind's gender. Dr. Robert Sapolsky, professor of neuroscience at Stanford University and one of the leading scholars of trans science notes the distinction: "[I]t's not the case that transgender individuals think they're a different gender than they actually are. It's more like they got stuck with bodies of a different sex from who they actually are." Sapolsky, R.M., Behave, 216 n.

-4-

(Penguin 2017.)  *See* Amend. Compl. ¶¶2-13.

Alternatively, Plaintiff is pleading a second definition of "sex" which defines "sex" synonymously with "gender."  Amend. Compl. ¶52.

Ms. Doe's gender is who she is, immutable, fundamental to her identity and legally protected.  A person's sex may be too, depending on the two alternative definitions of the word "sex."

**B.  Defendants Are Harming Ms. Doe by the Statute's Definition of Sex and Sex Change**

Ms. Doe is alleging that Defendants' words "sex" and "sex change" on birth certificates and related documents, and as defined by the practices of the Statute and related enabling legislation, are illegal and discriminatory because through their use the state is mandating Ms. Doe be identified by a state sanctioned fundamental identification document, a birth certificate, that, as the Defendants know, harms Jane Doe.  See Amend. Compl. ¶¶60-61: "60.  As noted in this Court's Order granting her anonymity: "No one disputes that she has a legitimate fear of severe harm, should her identity and trans status be made public."   61.  Ms. Doe has been placed in a situation by the Defendants where her trans status is revealed because of Defendants' failure to recognize her gender on her birth certificate and identify her by sex instead."

Moreover, Defendants "Sex Change" procedures are nothing of the sort -- they are contraindicated by appropriate procedures for treatment of trans people and are irrational even within their limited functional environment as they equate a liposuction procedure to a vaginoplasty and they fail to account entirely for non-surgical procedures.  Amend. Compl.  ¶78.

Defendants' documents and practices could be brought into conformity with a simple and reasonable accommodation, such as using a definition of sex that is as broad as gender, and confidentially correct a birth certificate sex designation to be of a person's gender upon the

request of that person.  Am. Compl. ¶¶ 79-80, 99, 113.

That is, if Jane Doe simply asked her birth certificate be changed to reflect her gender under the sex designator, the state does it, with all due confidential measures, as is done now with regard to other corrections.

## II. BACKGROUND

Plaintiff Jane Doe[1] was born in the State of New Jersey and is transgender ("trans"). Ms. Doe's birth certificate is a fundamental identification document but it does not accurately identify Ms. Doe's gender.  It is Jane Doe's right to have her gender recognized on her birth certificate, as it is on other fundamental identification documents where the state takes an active interest in their use and maintenance.[2]

Defendants' actions in issuing and maintaining Jane Doe's birth certificate are gender discrimination.   They cause Plaintiff to fear for her safety because the Defendants are outing of her as trans in her birth certificate, noting to the public that Jane was born with male genitalia, despite her gender and appearance now.  Amend. Compl. ¶¶ 60-68.

Defendants are aware that the State of New Jersey's law regarding discrimination, the New Jersey Law Against Discrimination, bans discrimination against trans people in employment, housing, places of public accommodation, credit, and business contracts.  *N.J. Rev. Stat. § 10:5-12*.  Id. ¶ 87.  Defendants are also aware that trans people with GD may be disabled

---

[1] Order Granting Motion to Proceed in Anonymity, Dkt. No. 14.

[2] The Federal Government and New Jersey use data gathered by Vital Statistics from birth certificates to define, develop, and/or support government programs, including health and disability programs.  Amend. Compl. at ¶ 42.

as a result of their GD.  Id. at ¶ 71.

### III.  LEGAL ARGUMENT

Fed.R.Civ.Pro 8(a)(2) "requires only 'a short and plain Statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds on which it rests.'" *Bell Atl. Corp.* v. *Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley* v. *Gibson,* 355 U.S. 41, 47 (1957)).

A three-part analysis is to be used when considering a Fed.R.Civ.Pro 12(b)(6) motion. *Malleus* v. *George,* 641 F.3d 560, 563 (3d Cir. 2011).  "First, the court must 'tak[e] note of the elements a plaintiff must plead to State a claim.'"  Id. (quoting *Ashcroft* v. *Iqbal,* 556 U.S. 662, 675 (2009)).  Second, the court must accept a plaintiff's well-pleaded factual allegations as true and the complaint must be construed in the light most favorable to the plaintiff, while disregarding any conclusory allegations proffered in the complaint.  *Fowler* v. *UPMC Shadyside,* 578 F.3d 203, 210-11 (3d Cir. 2009).  Finally, a court must "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler,* 578 F.3d at 211 (quoting *Iqbal,* 556 U.S. at 679).

The Defendants "bear[] the burden of showing that no claim has been presented." *Hedges* v. *U.S.,* 404 F.3d 744, 750 (3rd Cir. 2005).

Defendants' Brief fails the three-part analysis to be used when considering a Fed.R.Civ.Pro 12(b)(6) motion.  *Malleus* v. *George,* 641 F.3d 560, 563 (3d Cir. 2011). Therefore, Defendants have failed to carry their burden "of showing that no claim has been presented," *Hedges,* 404 F.3d at 750 and Defendants' Motion to Dismiss should be denied.

**A.  A Review of the Statute Should be in Accordance with Heightened Scrutiny and Defendants Have Not Rebutted the Statute's Presumptive Invalidity by Proving An Important or Compelling Government Interest.**

Jane Doe is challenging the Statute under the 14th Amendment's Due Process and Equal

Protection provisions.

Under the 14th Amendment, no State shall "deprive any person of life, liberty, or

property, without due process of law . . . [or] deny to any person within its jurisdiction the equal

protection of the laws."  The fundamental liberties protected by this provision include most of

the rights enumerated in the Bill of Rights and, importantly in the present matter, "extend to

certain personal choices central to individual dignity and autonomy, including intimate choices

that define personal identity and beliefs."[3]

The Due Process and Equal Protection Clauses are connected in a "profound" way,

although they set forth independent principles.[4]  Rights implicit in liberty and rights secured by

equal protection may rest on different precepts yet be instructive as to the meaning and reach of

the other.  In any particular case, one Clause may be thought to capture the essence of the right in

a more accurate and comprehensive way. This interrelation of the two principles furthers our

understanding of what freedom is and must become.[5]

Identifying and protecting fundamental rights is an enduring part of the judicial duty to

interpret the Constitution, and contrary to the Defendants' arguments, the judiciary's

---

[3] Obergefell v. Hodges, 135 S. Ct. at 2584, 2597 (2015) (state laws denying same sex marriage impose a stigma and injury that the Due Process Clause prohibits) .

[4] Id. at 2603.

[5] Id.

responsibility "has not been reduced to any formula."[6] As the Supreme Court stated:

> Rather, it requires courts to exercise reasoned judgment in identifying interests of the person so fundamental that the State must accord them its respect. History and tradition guide and discipline this inquiry but do not set its outer boundaries . . . . without allowing the past alone to rule the present. . . .When new insight reveals discord between the Constitution's central protections and a received legal stricture, a claim to liberty must be addressed.[7]

### B.  The Proper Level of Scrutiny

When reviewing a claim that a state action violates the Due Process or Equal Protection Clauses, a court must first determine the correct standard of review.[8]  State action that does not burden a fundamental right or target a suspect class will be upheld if it bears a rational relation to some legitimate end.[9]

In the present case, however, the Statute impermissibly interferes with Jane Doe's fundamental privacy rights; accordingly, heightened scrutiny requiring Defendants to prove that the Statute furthers a *compelling* state interest, is necessary.  Moreover, the Supreme Court has suggested that courts scrutinize more carefully a state's justifications of its actions when the state has a monopoly, as here, on an institution important to its citizens.[10]  For equal protection purposes, gender-based discriminations or classifications that target a suspect group such as

---

[6] Id. at 2598 (quoting Poe v. Ullman,  367 U.S. 497 (1961) (Harlan, J., dissenting)).

[7] Obergefell v. Hodges, 135 S. Ct.  at 2598.

[8] Donatelli v. Mitchell, 2 F.3d 508, 513 (3d Cir.1993).

[9] Ramsgate Court Townhome Ass'n v. W. Chester Borough, 313 F.3d 157, 160 (3d Cir. 2002) .

[10] Boddie v. Connecticut, 401 U.S. 371, 376-377 (1971); Darnell v. Lloyd, 395 F. Supp. 1210,  1214 (D. Conn. 1975)(citations omitted).

transgender individuals, also call for heightened scrutiny, meaning that the Statute must serve important governmental objectives and that the discriminatory means employed must be substantially related to the achievement of those objectives.[11]  In short, the Statute is subject to heightened scrutiny for both due process and equal protection purposes.[12]

### C.  The Statute Violates Jane Doe's Fundamental Rights and Her Substantive Due Process Rights

The Due Process Clause provides heightened protection against government interference with certain fundamental rights and liberty interests.[13]  Cases characterized as protecting "privacy" for purposes of due process have in fact involved at least two different kinds of interests: (1) the interest in avoiding disclosure of personal matters, and (2) the interest in independence in making certain kinds of important decisions.[14]  Here, both privacy rights are implicated.  The first privacy interest is violated because the Statute requires her to reveal private medical information to obtain an accurate birth certificate.  The second interest is violated because the Statute vitiates any choice in making private medical decisions.  Defendants do not address these privacy interests.

The Statute also improperly interferes with Jane Doe's other fundamental rights: (1) her

---

[11] Wengler v. Druggists Mut. Ins. Co., 446 U.S. 142, 150 (1980).

[12] See United States v. Virginia, 518 U.S. 515, 531(1996) (parties seeking to defend gender-based government action must demonstrate an "exceedingly persuasive justification" for that action.").

[13] Reno v. Flores, 507 U. S. 292, 301-302 (1993); Planned Parenthood v. Casey, 505 U.S. 833, 851 (1992).

[14] See Whalen v. Roe, 429 U.S. 589, 598-600 (1977).

right to refuse unwanted surgery involving her reproductive capacity;[15] (2) her right to define and express her identity, including intimate choices that define her identity and beliefs;[16] and her right to make personal choices central to her individual dignity and autonomy.[17]

A gender inaccurate birth certificate also deprives Jane Doe of other rights though interlocking rights, such as the right to marry, marital privacy, procreation, to refuse medical treatment.  Each of these have been ruled fundamental.

**D.  The Statute Violates Jane Doe's Right to Procedural Due Process.**

Defendants also ignore the fact that the Statute also violates Jane Doe's right to procedural due process under the 14th Amendment.  Procedural Due Process requires the state to afford an adequate level of process (notice and an opportunity to be heard) before depriving a person of a protected interest, such as the deprivation of a gender accurate birth certificate here.[18] Courts scrutinize more carefully a state's justifications of its actions when the state has a monopoly on an institution important to its citizens, marriage dissolution, identification (conclusive for some purposes) here.[19]

---

[15] See Casey, 505 U. S. at 846.

[16] See, e.g., Eisenstadt v. Baird, 405 U.S. 438, 453 (1972); Griswold v. Connecticut, 381 U.S. 479, 484-86 (1965).

[17] See, e.g., Eisenstadt, 405 U.S. at  453;  Griswold, 381 U.S. at 484-86; Schmerber v. California, 384 U.S. 757, 772 (1966)(superseded on other grounds by California's implied consent law, as stated in Berkley v. Miller, 2014 U.S. Dist. Lexis 68643 (C.D. Cal. 2014)) ("the integrity of an individual's person is a cherished value of our society");  D.R. v. Middle Bucks Area Vocational Technical School, 972 F.2d 1364, 1368 (3d Cir. 1992) (citing Ingraham v. Wright, 430 U.S. 651, 672-74 (1977)) (uncontested that plaintiffs have Constitutional liberty interest their personal bodily integrity).

[18] See Mathews v. Eldridge, 424 U.S. 319 (1976).

[19] Darnell, 395 F. Supp. at 1214 (citations, footnotes omitted.)

The State of New Jersey has created the entitlement to a gender accurate birth certificate as it is the only common governmentally-conferred, uniformly recognized, readily-accepted record that establishes identity, parentage, and citizenship, and is required in an array of contexts. The only procedure available to Jane Doe to obtain a gender-correct birth certificate is to undergo surgery.  The Statute, on its face, erects a barrier that violates Jane Doe's right to procedural due process.

A very recent United States Supreme Court case, *Pavan v. Smith*, 137 S. Ct. 2075 (June 26, 2017) supports Plaintiff's argument that a birth certificate is a fundamental identification document and that denying a gender accurate birth certificate denies Plaintiff her procedural due process rights.  In *Pavan*, a 6-3 per curiam decision, the Supreme Court ruled a same sex couple's constitutional rights were violated because the State of Arkansas refused to list both on their child's birth certificate, overturning an Arkansas Supreme Court ruling to the contrary: "[The State] has thus chosen to make its birth certificates more than a mere marker of biological relationships: The State uses those certificates to give married parents a form of legal recognition that is not available to unmarried parents. Having made that choice, [the State] may not, consistent with Obergefell, deny married same-sex couples that recognition." 137 S. Ct. at 2078-79.

The same reasoning controls here.  New Jersey "has chosen to make its birth certificates more than a mere marker of" infant genitalia. New Jersey birth certificates are a "common governmentally-conferred, uniformly recognized, readily-accepted record that establishes identity, parentage, and citizenship, and it is required in an array of legal contexts." [Amend. Compl. at 77.]  Accordingly, the State *must* provide Ms. Doe and others like her with those State created legal rights inherent in a gender accurate birth certificate.  Otherwise the State is denying

Ms. Doe her constitutional rights.  *Pavan*.

### E.  Jane Doe's Complaint Implicates Two Equal Protection Theories

In the present matter, Doe's Complaint implicates two equal protection theories.  First, she can point to the Statute as being facially discriminatory, i.e., by its own terms singles out transgender individuals for different treatment.[20]  The Statute, on its face, is limited solely to transgender individuals with Gender Dysphoria. When a facially discriminatory statute is involved, by definition the protected trait plays a role because the statute classifies people on that basis.[21]  In other words, the statute itself provides direct evidence of discriminatory intent.[22]  She may also identify the Statute as being facially neutral yet designed to impose different burdens on transgender individuals and that, even if applied evenhandedly, does in fact have the intended adverse effect.[23]  Both are viable legal theories and Defendants do not challenge Ms. Doe's claims under either theory.

Defendants incorrectly contend, however, that allegedly legitimate motives behind the Statute of preventing identity theft and ensuring the accuracy of vital records – which are, to say the least, far fetched  –  somehow immunize the Statute from being challenged here.  To establish discriminatory intent, rather than motive for enacting a challenged statute, all that needs to be shown is that the state meant to single out a plaintiff because of the protected characteristic

---

[20] 3 Ronald D. Rotunda & John E. Nowak, Treatise on Constitutional Law § 18.4 (10th ed. 2012); see, e.g., Adarand Constr., Inc. v. Pena, 515 U.S. 200, 213, 227 (1995).

[21] Cmty. Servs. v. Wind Gap Mun. Auth., 421 F.3d 170, 177 (3d Cir. 2005).

[22] Massarsky v. Gen. Motors Corp., 706 F.2d 111, 128 (3d Cir. 1983)(Sloviter, J., dissenting).

[23] Rotunda & Nowak, supra, § 18.4 (10th ed. 2012); see, e.g., Village of Arlington Heights v. Met. Hous. Dev. Corp., 429 U.S. 252, 264-66 (1977).

itself.[24]  For example, a prosecutor who strikes a juror on the basis of race discriminates intentionally even if motivated by a sincere desire to win the case.[25]  Here, the Complaint's allegations demonstrate that the Statute intentionally and improperly singles out Jane Doe from all other persons who want to amend their birth certificates precisely because she is transgender, regardless of whatever the State's alleged motives for enacting the Statute may be.

### F.  The Statute's Discrimination Is Not Legally Justified

Defendants next incorrectly contend that for equal protection purposes the Statute should be subject to the lowest level of scrutiny, rational-basis review.  At a minimum, intentional discrimination against any "identifiable group" is subject to rational-basis review, which requires the classification to be rationally related to a legitimate governmental purpose.[26]  Rational basis review places the burden of persuasion on the party challenging a law, who must disprove "every conceivable basis which might support it. "[27]  Of course, "a bare ... desire to harm a politically unpopular group" can *never* constitute a legitimate government interest.[28]

Where a "quasi-suspect" classification such as gender is at issue, however, the challenged statute must survive heightened "intermediate" scrutiny.   Intermediate scrutiny requires that a classification be substantially related to an important governmental objective.[29]  Moreover, under intermediate scrutiny review, the challenged statute is presumptively invalid, and

---

[24] See, e.g., Snyder v. Lousiana, 552 U.S. 472, 485 (2008).

[25] See Hassan v. City of N.Y., 804 F.3d 277, 298 (3d Cir. 2015)(citing Georgia v. Mc Collum, 505 U.S. 42, 59 (1992)).

[26] Johnson v. Cohen, 836 F.2d 798, 805 n.9 (3d Cir. 1987).

[27] Heller v. Doe, 509 U.S. 312, 320 (1993).

[28] Romer v. Evans, 517 U.S. 620, 634-35 (1996).

Defendants bear the burden of rebutting that presumption.[30]

Defendants fail to recognize that gender is a quasi-suspect class:  "Intermediate scrutiny (applicable to quasi-suspect classes like gender and illegitimacy) [and] requires that a classification be substantially related to an important governmental objective."[31]  Likewise, the United States Court of Appeals for the Third Circuit recently stated:  "For a gender-based classification to withstand equal protection scrutiny, it must be established "'at least that the [challenged] classification serves "important governmental objectives and that the discriminatory means employed" are "substantially related to the achievement of those objectives."  *See also United States v. Virginia*[32] and *Craig v. Boren* ("To withstand constitutional challenge, ... classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives." (quotations omitted).[33]

Several federal district and appellate courts have recently held that transgender classifications warrant heightened scrutiny because transgender people are a suspect/quasi-suspect class based upon four factors used by Supreme Court to determine whether a classification qualifies as a quasi-suspect class.[34] The factors are: (1) whether the class has been

---

[29] Clark v. Jeter, 486 U.S. 456, 461 (1988).

[30] Hassan v. City of N.Y., 804 F.3d at 305.

[31]  Clark v. Jeter, 486 U.S. at 461 (quotations omitted).

[32]  518 U. S. 515, 533 (1996) (quoting Mississippi Univ. for Women v. Hogan, 458 U. S. 718, 724 (1982), in turn quoting Wengler v. Druggists Mut. Ins. Co., 446 U. S. 142, 150 (1980)).

[33] 429 U.S. 190, 197-98 (1976).

[34] Whitaker v. Kenosha Unified Sch. Dist., 858 F.3d 1024 (7th Cir. 2017); Evancho v. Pine-Richland Sch. Dist., 237 F.Supp 267 (W.D. Pa. 2017), Adkins v. City of N.Y., 143 F. Supp.3d 134, 139-40 (S.D.N.Y. 2015); accord Bd. of Educ. of the Highland Local Sch. Dist. v. United States Dep't of Educ., No. 2:16-cv-524, 2016 WL 5372349, at * 17, 2016 U.S. Dist Lexis

-15-

historically subjected to discrimination ;[35] (2) whether the class has a defining characteristic that "frequently bears [a] relation to ability to perform or contribute to society";[36] (3) whether the class exhibits "obvious, immutable, or distinguishing characteristics" that define them as a discrete group;[37] and (4) whether the class is a minority or politically powerless.[38] Although immutability and lack of political power are not strictly necessary factors, they remain indicative of a suspect class.[39]

In *Whitaker v. Kenosha Unified School Dist.*, 858 F.3d 1024, 2017 U.S. App. LEXIS 9362 (7th Cir. May 30, 2017), a case involving a transgender student and an Equal Protection claim, the court rejected a rational basis level of scrutiny and instead found a heightened level of scrutiny to be appropriate. Id. at 25-26. In accordance with the heightened level of scrutiny, *the burden rests with the state to demonstrate that its proffered justification* is "exceedingly persuasive" and not merely a hypothesized or post hoc justification created in response to litigation. Id. at 26.

In *Adkins*, the court concluded that transgender people are a quasi-suspect class for equal

---

131474 *59-60 (S.D. Ohio Sept. 26, 2016).

[35] Bowen v. Gilliard, 483 U.S. 587, 602 (1987).

[36] City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 440-41(1985)(superseded by statute as stated in Human Res. Research Mgmt. Group v. County of Suffolk, 687 F. Supp.2d 237 (E.D. N.Y. 2010).

[37] Bowen v. Gilliard, 483 U.S. at 602.

[38] Id.

[39] See Cleburne, 473 U.S. at 442 n. 10, 472 n.24  (Marshall, J., concurring in part and dissenting in part) ("The 'political powerlessness' of a group may be relevant, but that factor is neither necessary, as the gender cases demonstrate, nor sufficient, as the example of minors illustrates.").

protection analysis in light of *Windsor v. United States*,[40] which had held that gay people were a quasi-suspect class on the basis of the four Supreme Court factors: gay people have suffered a history of persecution; sexual orientation has no relation to ability to contribute to society; gay people are a discernible group; and gay people remain politically weakened.[41] The <u>Adkins</u> court acknowledged that while transgender people and gay people are not identical, they are similarly situated with respect to each of the four factors.

In this case, all four factors justify heightened scrutiny.  First, transgender people have suffered a history of – and continue to suffer – persecution and discrimination.  Historically, transgender people have been subjected to discrimination including in education, employment, housing, and access to healthcare.  Second, transgender individuals are able to contribute to society. The Court in *Adkins* stated that it was not aware of any data or argument suggesting that a transgender person, simply by virtue of transgender status, is any less productive than any other member of society.[42]  Third, transgender people exhibit immutable characteristics that are sufficiently discernible to define a discrete minority class.  Incongruence between one's assigned sex and one's gender identity is neither chosen nor changeable; it is immutable and, often, quite obvious.[43]  The *Adkins* court stated, tellingly, that transgender people struggle with discrimination more frequently than gay individuals: "**[M]any forms of identification required for asserting legal rights, such as birth certificates, indicate the bearer's gender.  A mismatch between the gender indicated on the document and the gender of the holder calls**

---

[40] 699 F.3d 169 (2d Cir. 2012).

[41] <u>Id.</u> at 181–85.

[42] <u>Adkins v. City of N.Y.</u>, 143 F. Supp.3d 134, 139 (S.D.N.Y. 2015).

**down discrimination among other problems. Document troubles aside, transgender people often face backlash in everyday life when their status is discovered**.”[44]  Lastly, transgender people are a politically powerless minority.

Based upon these factors, transgender people are a quasi-suspect class, and contrary to Defendants' contentions, intermediate scrutiny is the appropriate standard of review here.[45]

The Complaint states viable Due Process and Equal Protection claims: the Statute's requirement that transgender persons undergo sex reassignment surgery to receive a birth certificate document that correctly identifies that person's gender does not further a compelling or important state interest.  Consequently, as Defendants have not rebutted the Statute's presumptive invalidity, their motion to dismiss the Complaint should be denied to allow the case to proceed.

---

[43] Id.

[44] Id. at 139-40.

[45] Defendants' reliance on Johnston v. Univ. of Pittsburg of Com. Sys. of Higher Educ., 97 F. Supp.3d 657 (W.D. Pa. 2015), appeal dismissed (March 30, 2016) for the proposition that gender discrimination does not constitute sex discrimination and heightened scrutiny is misguided for two reasons.  First, a later case in the Western District of Pennsylvania -- Evancho, 237 F.Supp.3d 267 -- distinguished Johnston on this exact point *and found for the transgender plaintiff's assertion using heightened scrutiny*.  Second, the cases Johnston cited to support its proposition, Ulane v. E. Airlines, Inc., 742 F.2d 1081 (7th Cir.1984), and Sommers v. Budget Mktg., Inc., 667 F.2d 748 (8th Cir.1982), cert. denied, 471 U.S. 1017 (1985),  are no longer good law.  In both Ulane and Sommers, the courts refused to extend sex discrimination to include discrimination against transgender individuals or those with nonconforming gender types; however, the Supreme Court in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), overruled those cases. In Price Waterhouse, the Supreme Court considered a Title VII claim based on allegations that an employee was denied partnership because she was considered "macho" and "overcompensated for being a woman." 490 U.S. at 235. She had been advised to "walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry." Id. The Court found that such comments were indicative of gender stereotyping, which was prohibited as sex discrimination.  See also Glenn v. Brumby, 663 F.3d 1312, 1318 n. 5 (11th Cir. 2011) (federal courts have recognized with near-total uniformity

### G.  The Statute Does Not "Fit" Its Alleged Purpose

The final step in evaluating a due process claim and an equal-protection claim is to examine the challenged Statute's  "means" and "ends" and the "fit" between the two.[46] For due process purposes, the Statute must be *narrowly tailored* to a compelling state interest.  Likewise, for equal protection purposes, the Statute must be *substantially related* to an important government interest.  Heightened scrutiny demands a much stronger justification and a much tighter relationship "between the means employed and the ends served."[47]  Also, under both intermediate and strict scrutiny, the burden of justification "is demanding and . . . rests entirely on the State."[48]

Defendants never attempt to explain how requiring surgery, including liposuction, combats fraud and identity theft, aside from a single unsupported statement that the Statute prevents "different versions of otherwise genuine birth certificates."[49]  Defendants never explain why the various procedures, known as Sex Reassignment surgery, and which include liposuction, liposuction, lipofilling, voice surgery, thyroid cartilage reduction, hair reconstruction and other procedures are necessary and rational to combat fraud.  Defendants never explain how multiple versions of an otherwise genuine birth certificate would be issued if SRS were not required.

Various statutes and policies in New Jersey allow for correcting vital records for various

---

that  Sommers and Ulane have "been eviscerated" by Price Waterhouse's holding).

[46] Hassan v. City of N.Y., 804 F.3d at 305.

[47] Tuan Anh Nguyen v. INS, 533 U.S. 53, 77-78 (2001) (O'Connor, J., dissenting).

[48] United States v. Virginia, 518 U.S. 515, 533 (1996).  See also Miss. Univ. for Women v. Hogan, 458 U.S. 718, 724 (1982) (discussing the standard and burden for intermediate scrutiny); Fisher v. Univ. of Tex. at Austin, 133 S. Ct. 2411, 2419 (2013) (strict scrutiny).

[49] Defendants' Brief at 19.

reasons, e.g., for non-issuance due to fraud in a local registrar's office (Hudson County) or for changes to names, events, marriage or domestic partner certificates.[50]   Under those corrective statutes, and under the Statute being challenged here, there is no allowance for "multiple versions."  Under the Statute, the initial birth certificate is withdrawn and maintained under seal. Plaintiff is simply asking for the same ability to correct an identification document required by many institutions.  Jane Doe is not asking for multiple versions, just one, and Defendants do not justify how requiring Jane Doe to undergo surgery would eliminate multiple copies of her birth certificate.

### H.  Gender Dysphoria is a Disability

Gender Dysphoria ("GD") is a disability for purposes of the ADA and the Rehab Act. The United States filed a Statement of Interest in this case [Dkt. No. 49] stating it is federal policy that GD falls under the ADA.  *See also* the amicus brief in this case [Dkt. No. 19.]  (The Rehabilitation Act has the same scope of coverage as the ADA.  See, e.g., *Frederick L. v. Dep't of Public Welfare*, 364 F.3d 487, 491 (3rd Cir. 2004) ("We have construed the provisions of the RA and the ADA in light of their close similarity of language and purpose.").[51]

Gender Dysphoria is different from other, excluded conditions, such as Gender Identity Disorder or Transsexuality.  The Defendants' attempt to confuse the issue by labeling the two diagnosis the same should be rejected by the Court, as it had been by the *Blatt* court in the Eastern District of Pennsylvania: "Congress did not intend to prevent people who "identify[]

---

[50] See, e.g., Correcting a Vital Record, at http://www.State.nj.us/health/vital/correcting-vital/).

[51] Congress, in the ADA, required courts "to construe the ADA to grant at least as much protection as provided by the regulations implementing the Rehabilitation Act."  *Bragdon v.*

with a different gender" from receiving coverage under the statute if the person has a disability like Gender Dysphoria." Id. at *4.

### I.  Defendants Are Not Entitled to Sovereign Immunity

Defendants' final argument – that they are entitled to sovereign immunity in accordance with the Eleventh Amendment to the United States Constitution[52] – is contrary to well-established law.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State."

Three well known exceptions to Eleventh Amendment immunity are: (1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law.[53]

Young's third exception clearly applies to the present matter.  The theory behind Young's third exception is that a suit to halt enforcement of a state law in conflict with the United States Constitution is an action against individual officers charged with that enforcement and ceases to be an action against the state to which sovereign immunity extends; the officers are stripped of their official or representative character and become subject to the consequences of their individual conduct.[54]  The Young doctrine has been accepted for more than 100 years as

---

Abbott, 524 U.S. 624, 631-32 (1998) (citing 42 U.S.C. § 12201(a)); accord. 28 C.F.R. § 35.103.

[52] Defendants' Brief at 28.

[53] MCI Telecomm. Corp. v. Bell Atl. Pennsylvania, 271 F.3d 491, 503-08 (3d Cir.2001), discussing Ex Parte Young, 209 U.S. 123 (1908).

[54] See Young, 209 U.S. at 159-60; see also Pennhurst State Sch. and Hosp. v. Halderman, 465 U.S. 89, 103 (1984) (Pennhurst II) (under Young, an action for prospective relief against the

necessary to permit federal courts to vindicate federal rights and to hold state officials responsible to the "supreme authority of the United States."[55] The <u>Young</u> doctrine applies both to violations of the United States Constitution and federal statutes.[56]

In the present matter, in accordance with 42 U.S.C. § 1983, Plaintiff Jane Doe states viable claims for prospective injunctive relief and declaratory relief against the individual state officers to end ongoing violations of the United States Constitution – claims that are a clear exception to sovereign immunity under <u>Young</u>.  Accordingly, the Defendants are not entitled to sovereign immunity in this matter.

## IV.   CONCLUSION

Defendants' motion to dismiss the complaint should be denied.  Defendants' legal arguments are based upon false factual assertions.  Defendants would lead this Court into error by applying an improper level of scrutiny when reviewing the Statute, which impermissibly infringes on Jane Doe's right to privacy, her substantive and procedural Due Process rights, and

---

state officer was not an action against the state because the allegation of a violation of federal law would strip the officer of his official authority).

[55] Pennhurst II at 105.

[56] <u>MCI Telecomm. Corp. v. Bell Atl. Pennsylvania</u>, 271 F.3d at 503.

her rights under the 14th Amendment's Equal Protection Clause.  The Defendants also misread

the ADA; Gender Dysphoria is <u>not</u> excluded under that statute.  Finally, the Defendants are not

entitled to Sovereign Immunity in this case.

<div style="margin-left:40%">

Respectfully,

<u>s/ Paul R. Fitzmaurice</u>
Paul R. Fitzmaurice
Paul R. Fitzmaurice, P.C.
130 Linden Avenue
Haddonfield, NJ 08033
(856) 287-4902
<u>PaulRFitzmaurice@gmail.com</u>

_____
Julie Chovanes, Esq.
Trans Resource Foundation LLC
P.O. Box 4307
Philadelphia, PA 19118
(267) 235-4570
jchovanes@chovanes.com


Counsel for Plaintiff

</div>

Date: November 20, 2017